Maurice LEVIN, Lillian Levin and Frances Levin, copartners trading as Crestview, Plaintiffs,

v.

John E. MANNING, Collector of Internal Revenue, Defendant.

Maurice LEVIN, Lillian Levin, Martin Levin and Ruth L. Sagner, copartners trading as Brookdale Homes, Plaintiffs,

v.

John E. MANNING, Collector of Internal Revenue, Defendant.

BROOKDALE HOMES, Inc., a corporation of New Jersey, in dissolution, and Maurice Levin, Lillian Levin and Martin Levin, as Trustees in dissolution thereof, Plaintiffs,

v.

John E. MANNING, Collector of Internal Revenue, Defendant.

Civ. Nos. 657–659.

United States District Court,
D. New Jersey.

Nov. 26, 1952.

As Amended Dec. 12, 1952.

Osborne, Cornish & Scheck, Emanuel P. Scheck, Newark, N. J., for plaintiffs, Herman J. Harris, Newark, N. J., on the brief.

Grover C. Richman, Jr., Atty. Gen., John J. Corcoran, Jr., Asst. U. S. Atty., Newark, N. J., Ellis N. Slack, Acting Asst. Atty. Gen., Andrew B. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., for defendant.

MEANEY, District Judge.

These actions were instituted for the recovery of social security taxes in the amount of $15,231.98. Said taxes were assessed and collected for the period commencing January 1, 1937, and ending December 31, 1943. The Collector based his action on the Federal Insurance Contributions Act, 26 U.S.C.A. § 1400 et seq. and the Federal Unemployment Tax Act, 26 U.S.C.A. § 1600 et seq. Plaintiff-taxpayers allege that the assessments which formed the basis for the collections were erroneously made.

By consent of the parties the actions were consolidated and trial was held by the Court sitting without a jury.

### Findings of Fact.

1. Plaintiff-taxpayers have been engaged in the business of constructing houses for public sale, and were so engaged during the taxable years in question.

2. For the performance of rough work, cleaning up, unloading materials and the like, plaintiffs employed ordinary laborers by the hour, day or week.

3. Social security taxes were paid by plaintiffs on these persons, and this action is not in issue here.

4. With regard to the actual construction work, that is, framing, roofing, plumbing, plastering and the like, various men possessed of a certain degree of skill in these callings were given the opportunity to submit bids.

5. These bids, when accepted, became the contract price. Said price would either be for an individual unit or for a group of units.

6. The contract price was paid to the individual contractor or to the partnership, as the case might be.

7. Where an individual contractor employed others, he paid their salaries from the lump sum payment he had received.

8. The contract price did not vary with the length of time taken to complete the work.

9. With the exception of paint, plaintiffs furnished the materials to be used in performing the work.

10. The tools and equipment used by the alleged contractors were their own.

11. There were no set times for the contractors to be on the job, nor was there any transportation furnished to them by plaintiffs.

12. The alleged contractors were not only allowed to but actually did work for others than the plaintiffs.

13. Plaintiffs exercised no control over the selection, dismissal or compensation of those whom the alleged contractors hired.

14. In some cases where plaintiffs discovered that the alleged contractors were not deducting Social Security taxes from the salaries of their workmen, plaintiffs paid said taxes and deducted the amounts paid from the contract price.

15. Plaintiffs were solely concerned with the results. When the results did not conform to the contract standard, there was no extra compensation for correcting or repairing defective work.

16. On some occasions where the purported contractor did not complete the work in a satisfactory manner and refused to make corrections, another contractor would be hired to correct the defects. He would be paid for this.

17. The basis for the assessment of the taxes was that the alleged contractors were employees during the years in question and thus subject to the provisions of the Act.

### Discussion.

The fundamental question here involved is whether the alleged contractors are employees or independent contractors within the meaning of the Act. If the latter, then plaintiffs should prevail. If the former, then the taxes were not erroneously assessed and judgment should be entered for the defendant.

The pertinent statutory provisions are sections 1426(d) and 1607(i) of Title 26. During the period in question these sections provided that an "employee" shall include an officer of a corporation. In considering problems arising under these sections the Supreme Court found that no precise definitions of employer and employee were set out in the Act. See U. S. v. Silk, 1947, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757. Consequently it was held that the terms "employment" and "employee" should be construed to effectuate the purposes of the Act. See Silk case, above. In a later decision, the Court stated that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." See Bartels v. Birmingham, 1947, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947. The Court of Appeals for this Circuit (the Third) followed these pronouncements in Schwing

**194**

v. U. S., 1948, 165 F.2d 518, 1 A.L.R.2d 548, the leading case on this question in this Circuit.

However, in 1948 Congress recognized and remedied this lack of statutory definition. By Act of June 14, 1948, 62 Stat. 438, 26 U.S.C.A. §§ 1426(d) and 1607(i), it was provided that the usual common-law rules were to be applied to determine whether a person was an employee or an independent contractor. These amendments were made retroactive to February 10, 1939.

Congress thus obviated the necessity for judicial construction. This has been recognized by the courts. See New Deal Cab Co. v. Fahs, 5 Cir., 1949, 174 F.2d 318. There the Court in reversing judgments entered in the District Court applied the common-law rules and disregarded the "economic reality" test set out in the Bartels case, supra. See, also, Dimmitt-Rickoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 1950, 179 F.2d 882.

The common-law concepts governing the determination of independent contractor or employee are excellently stated by Judge Goodrich in National Labor Relations Board v. Nu-Car Carriers, 3 Cir., 1951, 189 F.2d 756. In that case the Court was called upon to determine whether certain persons were employees or independent contractors under the Labor Management Relations Act of 1947, 29 U.S.C.A. § 158. While holding that the individuals were employees, the Court stated the following: "* * * 'The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results.' Restatement, Agency, § 220 (1933). We may add to this Judge Learned Hand's statement: 'The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said * * *.' Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715, 717." See National Labor Relations Board v.

Nu-Car Carriers, supra, 189 F.2d at page 757.

In the instant case the testimony shows that the alleged contractors were solely responsible for results. The men were hired as possessed of a certain amount of skill in their craft. Remuneration was on a contract basis. The employer exercised no control over the selection of helpers, nor did he control the number that could be hired. In addition there were no specified hours of work. These factors indicate control of results, not of details.

### Conclusions of Law.

1. This Court has jurisdiction. See 28 U.S.C.A. § 1340.

2. The persons in question were independent contractors, not employees.

3. Thus the taxes in question were erroneously assessed.

4. Judgment should be entered in favor of the plaintiff-taxpayers in the three actions.